**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MILLWRIGHTS LOCAL 1102, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Respondent.**

No. 84–5853.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1985.

Decided Dec. 23, 1985.

Elliott Moore, Jerry Wohlgemuth, argued, Deputy Associate Gen. Counsel, Washington, D.C., Kenneth Hipp, John Rubin, for petitioner.

* Hon. Julia S. Gibbons, United States District Judge for the Western District of Tennessee,

Donald F. Sugarman, argued, Miller, Cohen, Martens, Sugerman, Detroit, Mich., for respondent.

Before KEITH and KRUPANSKY, Circuit Judges, and GIBBONS, District Judge.*

PER CURIAM.

This case is before the court upon the application of the National Labor Relations Board for enforcement of its order against Millwrights Local 1102, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the Millwrights).

In May, 1983, the International Industrial Contracting Corporation (the Company) was picketed by the Millwrights to coerce the Company into assigning employees represented by Millwrights the work of moving and installing heavy machinery on a job site in Michigan. The Company had assigned this work to employees represented by Riggers Local 575, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO (the Riggers).

This jurisdictional dispute was presented to the National Labor Relations Board (the Board) for resolution pursuant to Section 10(k) of the National Labor Relations Act, as amended, 29 U.S.C. 160(k) (the Act), and the Board awarded the work to the Riggers. In so doing, the Board considered the following factors: (1) a prior jurisdictional decision by the Board in *Millwrights Local 1102 (Don Cartage)*, 160 N.L.R.B. 1061 (1966); (2) the Company's practice and preference; (3) industry practice in states other than Michigan; (4) the Riggers' collective bargaining agreement with the Company; (5) the relative skills of the Riggers and the Millwrights; and (6) the efficiency and economy of operation. Of these six factors, the Board concluded that only one, the industry practice outside of Michigan, would favor an award of the disputed work to the Millwrights.

sitting by designation.

Prior to addressing the contentions of the parties to this action, it should be noted that Section 10(k) defines no standards to guide the Board in resolving jurisdictional disputes and the Supreme Court has mandated the Board to use its own special expertise and common sense in disposing of similar controversies. In *NLRB v. Radio and Television Engineers, Local 1212,* 364 U.S. 573, 583, 81 S.Ct. 330, 336, 5 L.Ed.2d 302 (1961), the Court addressed the inherent difficulties in the Board's application of Section 10(k):

> It is true that this forces the Board to exercise under § 10(k) powers which are broad and lacking in rigid standards to govern their application. But administrative agencies are frequently given rather loosely defined powers to cope with problems as difficult as those posed by jurisdictional disputes and strikes. It might have been better, as some persuasively argued in Congress, to intrust this matter to arbitrators. But Congress, after discussion and consideration, decided to intrust this decision to the Board. It has had long experience in hearing and disposing of similar labor problems. With this experience and a knowledge of the standards generally used by arbitrators, unions, employers, joint boards and others in wrestling with this problem, we are confident that the Board need not disclaim the power given it for lack of standards. Experience and common sense will supply the grounds for the performance of this job which Congress has assigned to the Board.

This Supreme Court mandate has accorded great deference to Board decisions which has been recognized by various courts of appeal. *See, NLRB v. Teamsters, Chauffeurs, Warehousemen & Helpers,* 403 F.2d 667, 673 (9th Cir.1968) ("Under [10(k)] Congress has committed to the Board a task which requires the exercise of a wide degree of discretion and its special expertise."); *NLRB v. Local 825, International Union of Operating Engineers,* 326 F.2d 213, 218 (3rd Cir.1964) ("[I]t is the function of the Board and not this court to consider the relevant factors and to weigh

and evaluate the evidence adduced with respect to each."); *NLRB v. International Die Sinkers' Conference, Milwaukee Lodge No. 10,* 402 F.2d 407, 411 (7th Cir. 1968) ("[W]e agree with the Third and Fifth Circuits that where the Board has made its determinations on the totality of the factors involved, the award should not be disturbed.") The sentiments expressed by these courts of appeal apply with equal force to the case at bar.

On appeal, the Millwrights argue that the decision of the Board is not supported by the evidence and is arbitrary and capricious. The Millwrights especially dispute the weight accorded by the Board to its former decision in *Don Cartage. Don Cartage* involved an identical jurisdictional dispute between these same unions. That decision awarded to the Riggers the moving, assembly and preliminary installation of heavy machinery on all work accomplished on behalf of members of the Michigan Cartagemen's Association in the Michigan counties in which both the Riggers and Millwrights exercised jurisdiction. *Don Cartage* further awarded the final installation of anchor bolts and nuts, final tightening and adjusting of machinery, and aligning and leveling to the Millwrights. In that decision, however, the Board admonished the Millwrights not to insist upon such work when it was so insignificant, so incidental, and of such short duration as to warrant only the use of Riggers. 160 N.L. R.B. at 1079, 1082–83.

Before the Board, the Millwrights argued that *Don Cartage* was no longer valid precedent because it had been superceded by a national agreement between the parent international unions of both the Riggers and Millwrights—the International Association of Iron Workers and the United Brotherhood of Carpenters, respectively, which became effective in February of 1971. The avowed purpose of the 1971 Agreement was to avoid jurisdictional disputes of the type here in issue between the two unions. The 1971 Agreement provided that the installation of heavy machinery was to be performed by a composite crew

of Riggers and Millwrights with the final alignment and leveling of machinery, and the tightening of anchor bolts and nuts to be assigned to the Millwrights.

The Millwrights further urged that the 1971 Agreement was national in scope and was intended to supersede *Don Cartage* in the relevant Michigan counties, was binding upon all parties and constituted a voluntary accord of all differences between the two unions.

Pursuant to Section 10(k) of the Act, if the Board determines that a voluntary disposition of a jurisdictional dispute has been agreed upon between the parties, it is foreclosed from considering the merits of the dispute and must give effect to the voluntary resolution. Section 10(k) further mandates that the party alleging the existence of this resolution produce satisfactory evidence of it ("the Board is empowered and directed to hear the dispute ... unless ... the parties to such dispute submit to the Board satisfactory evidence that they have adjusted ... the dispute.")

The Board concluded that the Millwrights had not carried this burden and considered the merits of the dispute. It is the Millwrights' primary contention on appeal that the Board erred in failing to view the 1971 Agreement as a voluntary adjustment of the jurisdictional dispute. However, a review of the Board's decision readily discloses that it was supported by substantial evidence. First, evidence was adduced at the 10(k) hearing that *Don Cartage* has been consistently applied in the relevant Michigan counties during the last seventeen years without any significant work stoppage, dispute or litigation until the initiation of this controversy. Second, the Board had before it the transcript of a 1971 meeting which was conducted to explain the 1971 Agreement to the respective unions. This transcript discloses that even before the ink of the 1971 pact was dry, there was substantial disagreement as to the continuing validity of *Don Cartage* in Michigan. Third, the testimony of the various union representatives which the Board

entertained at the 10(k) hearing was replete with contradictions. Representatives of the Millwrights and its parent international insisted that the 1971 Agreement was intended to supercede the *Don Cartage* determination. However, an equal number of Rigger representatives opined that *Don Cartage* remained as the final authority for resolving jurisdictional differences of the type here in issue. Given the disputed nature of the evidence, it is readily apparent that the Board did not err in concluding that the Millwrights had failed to carry their burden of proving that the 1971 Agreement was intended to serve as a voluntary adjustment of jurisdictional disputes within Michigan.

This court has considered the remainder of the Millwrights' contentions and finds them to be without merit. For the foregoing reasons, the order of the Board is hereby ENFORCED.